IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THOMAS SMITH,<br><br>              Plaintiff,<br><br>v.<br><br>LATOYA HUGHES,<br>DARREN GALLOWAY,<br>KARL BRADFORD, and<br>JACOB HORN,<br><br>              Defendants. | Case No. 24-cv-02349-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Thomas Smith, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred at Shawnee Correctional Center. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE FIRST AMENDED COMPLAINT

Plaintiff alleges that in February 2023, while housed at Shawnee Correctional Center, he was placed in a cell with a broken window. (Doc. 11, p. 3). At the time, there was a snowstorm, and the outside temperature was well below freezing. The cell had approximately a foot of snow in the corner that had blown in through the broken window. Plaintiff tried to keep warm by layering

his clothing and staying under blankets, but he was freezing. His hands and feet were numb and stinging with pain. After three or four days, Plaintiff filed an emergency grievance about the conditions of his cell. Defendant Warden Darren Galloway denied the grievance. (*Id.*).

After remaining in the cell for another five days, Plaintiff could not "physically or mentally handle being frozen" and so he "refused housing by going on hunger strike." (Doc. 11, p. 3). Plaintiff was placed in segregation, where he continued to be subjected to cold temperatures, as the heaters in the segregation unit were not working. Plaintiff wrote a letter to Defendant Director Latoya Hughes seeking help but did not receive a response. Eventually, Plaintiff states he came to an agreement with mental health staff. He quit the hunger strike and was moved to a unit with functioning heaters and no broken windows. (*Id.*).

On October 31, 2023, Plaintiff was instructed to move to a new cell in a housing unit with broken heaters and windows. (Doc. 11, p. 3). At the time, the temperatures outside were dropping. Plaintiff did not want to move back into a freezing cell, and so he refused housing and again went on a hunger strike. Plaintiff was issued a disciplinary ticket for disobeying a direct order and placed in segregation. (*Id.*). While on his hunger strike, Plaintiff states he met with Warden Galloway on several occasions. (*Id.* at p. 4). During their first interaction, Plaintiff told Galloway that he was on a hunger strike because he did not want to be moved into a freezing cell with a broken window. Galloway told Plaintiff, "You don't get to choose where you live[,] this is prison not the Hilton and since you're not eating, I guess you'll just be cold and hungry." Plaintiff wrote a grievance and another letter to Director Hughes. Again, he did not receive a response. (*Id.*).

On November 2, 2023, Plaintiff met with Defendant Intelligence Officer Horn about why he was on a hunger strike. (Doc. 11, p. 4). Plaintiff explained the situation, and Horn "strongly advised that [Plaintiff] come off the hunger strike." Plaintiff refused unless he was guaranteed to be placed in a cell with a working window and heater. Horn responded, "you're going to regret

that answer." (*Id.*).

On November 4, 2023, Plaintiff received a false disciplinary ticket, written by Horn, for making threats about staff on a phone call with family members. (Doc. 11, p. 4). Plaintiff was charged with dangerous communications and threats or intimidation. (*Id.*).

On November 7, 2023, Plaintiff had a hearing before the Adjustment Committee on the charges of disobeying a direct order. (Doc. 11, p. 4). The Adjustment Committee was chaired by Defendant Bradford. Prior to the hearing, Plaintiff states he did not receive a copy of the ticket and was not allowed to call any witnesses. (*Id.*). Plaintiff was found guilty and sentenced to fourteen days in segregation, thirty days of C-grade status, and a disciplinary transfer. (*Id.* at p. 5).

Plaintiff's disciplinary hearing for the charges of dangerous communications and threats or intimidation was held before Bradford on November 11, 2023. (Doc. 11, p. 5). Based on no evidence, Plaintiff was found guilty. He was sanctioned with an additional fourteen days in segregation, an additional thirty days of C-grade status, and a disciplinary transfer. (*Id.*).

On November 18, 2023, Plaintiff again spoke to Warden Galloway. (Doc. 11, p. 5). Plaintiff told Galloway that he was still on a hunger strike because staff was attempting to place him in a cell without a working window and no heat. Plaintiff also told Galloway that Bradford had not followed proper procedures during his disciplinary hearings. Galloway did not investigate any of Plaintiff's claims. Plaintiff was transferred to Pinckneyville Correctional Center, a higher security prison. (*Id.*).

Plaintiff filed grievances regarding his disciplinary hearings, and the Administrative Review Board overturned the findings of guilt and expunged both disciplinary tickets from Plaintiff's record. (Doc. 11, p. 6).

**PRELIMINARY DISMISSAL**

Plaintiff states that he is suing defendants in their individual and official capacity. (Doc.

11, p. 1-2). Plaintiff, however, is only seeking monetary damages and so his official capacity claims are dismissed with prejudice. See *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001).

The Court also dismisses all claims against Director Hughes. Plaintiff claims that he wrote two letters to Hughes about the cold conditions of his cells putting her on notice of his alleged unconstitutional conditions. (Doc. 11, p. 1, 3, 4). But Plaintiff cannot recover damages under Section 1983 based on the theory that because he wrote Hughes letters, she is personally liable for harm caused by the conditions of his cell at Shawnee Correctional Center. *Courtney v. Devore*, 595 F. App'x 618, 620 (7th Cir. 2014) (upper-level officials "are ordinarily not personally liable for decisions made by subordinates, even if they receive a letter complaining about those decisions and do not intervene." (citing *Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009))). Accordingly, Plaintiff has failed to state a viable claim against Hughes.

## DISCUSSION

Based on the allegations in the First Amended Complaint, the Court designates the following counts:

**Count 1:**   Eighth Amendment claim against Galloway, Braford, and Horn for failing to provide Plaintiff with constitutional conditions of confinement in 2023.

**Count 2:**   First Amendment claim against Horn for issuing Plaintiff a false disciplinary ticket in retaliation for Plaintiff declaring a hunger strike and requesting to be placed in a cell with functioning heat and without a broken window.

**Count 3:**   Fourteenth Amendment claim against Bradford and Horn for the denial of due process in connection with the disciplinary ticket issued on November 4, 2023, and the disciplinary hearings held on November 7 and 11, 2023.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the**

**First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Count 1

Inmates do not have a protected interest in any particular living arrangement, but "[b]y prohibiting cruel and unusual punishment, the Eighth Amendment imposes duties on prison officials to 'provide humane conditions of confinement' and 'ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021).

For an unknown amount of time beginning in February 2023, when temperatures outside were extremely low, Plaintiff was housed in a cell with a broken window and then in a segregation cell with no working heat. Several months later in October 20223, Plaintiff was then forced to choose between refusing housing, receiving a disciplinary ticket, and being placed in segregation or being housed again in a frigid cell, with a broken window, and no working heat.

The Court finds that Plaintiff has stated a claim against Warden Wills. The fact that an official denied a grievance is generally not sufficient to infer liability. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). However, a supervisory official "can realistically be expected to know about or participate in creating systemic prison conditions." *Haywood v. Wexford Health Sources, Inc.,* 2024 WL 4367790, at *11 (N.D. Ill. Sept. 30, 2024) (internal citations and quotations omitted). Based on the allegations that there were other cells with broken windows and other housing units without function heat in 2023 at Shawnee Correctional Center, the Court can plausibly infer that Galloway knew about the poor conditions of the cells. Additionally, Plaintiff personally spoke to Wills in November about his housing situation. Thus, the Court finds that Plaintiff has stated a claim against Wills for failing to provide him adequate shelter and protection

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

from extreme cold. *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir.1997).

As for Horn and Bradford, Plaintiff claims that he spoke to both individuals about his situation and why he was on a hunger strike in November 2023, but neither individual took reasonable measures to ensure that Plaintiff had safe living conditions. Accordingly, Count 1 will also proceed against Bradford and Horn.

### Count 2

Plaintiff asserts that after he refused to stop his hunger strike unless he was placed in a cell with functioning heat and without a broken window, Horn told him, "You're going to regret that answer," and later issued him a false disciplinary ticket. (Doc. 1, p. 4).

Plaintiff has sufficiently stated a claim for retaliation, and Count 2 against Horn will proceed. *See Czapiewski v. Pingel,* No. 16-CV-1709, 2017 WL 435803, at *2 (E.D. Wisc. Feb. 1, 2017); *Thomas v. Wolfe*, No. 112-CV-443-JMS-DKL, 2016 WL 4592201, at *2 (S.D. Ind. Sept. 2, 2016); *Birdo v. Dave Gomez*, 214 F. Supp. 3d 709, 719 (N.D. Ill. 2016).

### Count 3

The Fourteenth Amendment Due Process Clause provides that "[n]o State shall…deprive any person of life, liberty, or property, without due process of law." U.S. CONST., amend. XIV, § 1. To pursue a due process claim in the prison discipline context, an inmate must show that (1) he possessed a protected liberty or property interest and (2) was deprived of that interest without due process. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *Westefer v. Snyder,* 422 F.3d 570, 585-86 (7th Cir. 2005).

Here, Plaintiff has not sufficiently alleged that he was deprived a liberty interest, and so, no due process was required prior to placing him in segregation for 28 days, reducing him to C-grade status, and transferring him to a higher security facility. *See Hoskins v. Lenear,* 395 F. 3d 372, 375 (7th Cir. 2005) (demotion in status, segregation, and transfer do not raise due process

concerns); *Thomas v. Ramos*, 130 F.3d 754, 761–62 & n. 8 (7th Cir.1997) (temporary segregation and demotion to C-grade status). Accordingly, Count 3 is dismissed.

## DISPOSITION

For the reasons stated above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against Galloway, Bradford, and Horn. **COUNT 2** shall proceed against Horn. **COUNT 3** is **DISMISSED without prejudice**. All claims against Defendant Director Hughes are **DISMISSED without prejudice**, and she shall be terminated as a defendant on the docket.

The Clerk of Court shall prepare for Galloway, Bradford, and Horn the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the First Amended Complaint (Doc. 11) and this Memorandum and Order to each defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the First Amended Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C.

§ 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 31, 2025**

 *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.